**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| JAMES P. BADGER, | : | Civil No. 02-0077 (JEI) |
|  | : |  |
| Petitioner, | : |  |
|  | : |  |
| v. | : | **O P I N I O N** |
|  | : |  |
| ROY L. HENDRICKS, et al., | : |  |
|  | : |  |
| Respondents. | : |  |

---

**APPEARANCES:**

> JAMES P. BADGER, #248598
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey  08625
> Petitioner pro se

> DEBORAH BARTOLOMEY, Deputy Attorney General
> PETER C. HARVEY, ATTORNEY GENERAL OF NEW JERSEY
> Division of Criminal Justice - Appellate Bureau
> P.O. Box CN 086
> Trenton, New Jersey  08625
> Attorneys for Respondents

**IRENAS**, District Judge

James P. Badger filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a).  Respondents filed an Answer, arguing, inter alia, that the Petition should be dismissed as untimely and on the merits.  Petitioner filed a Traverse.  For the reasons expressed below, the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability.  See 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

## I.  BACKGROUND

Petitioner challenges a judgment of conviction entered on October 23, 1992, in the Superior Court of New Jersey, Law Division, Cumberland County, after a jury convicted him of purposeful or knowing murder, first degree robbery, third degree possession of a weapon with a purpose to use it unlawfully, and felony murder.  The Court sentenced Petitioner to a 30-year term of imprisonment, with a 30-year period of parole ineligibility, and a consecutive term of 20 years, with a 10-year period of parole ineligibility.

Petitioner appealed, and by opinion filed June 29, 1994, the Appellate Division of the Superior Court of New Jersey affirmed the convictions and remanded for an evidentiary hearing on Petitioner's motion for a new trial to explore contentions that a co-defendant had recanted his testimony and that the prosecutor violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose leniency agreements with this co-defendant and with other witnesses.  See State v. Badger, N. A-1572-92T1 slip op. (App. Div. June 29, 1994).  After conducting an evidentiary hearing, the Law Division denied Petitioner's motion for a new trial on November 17, 1994.  On June 11, 1996, the Appellate Division affirmed.  On October 2, 1996, the Supreme Court of New Jersey denied certification.

In November 1996, Petitioner filed a petition for post conviction relief in the Law Division.  The Law Division denied relief in a written opinion dated January 29, 1998.  Petitioner appealed and on June 12, 2000, the Appellate Division affirmed the order denying post conviction relief.  The New Jersey Supreme Court denied certification on January 3, 2001.

Petitioner executed the Petition which is now before the Court on December 21, 2001, and the Clerk received it on January 4, 2002.  The Court notified Petitioner of the consequences of filing such a Petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA") and gave him an opportunity to withdraw the Petition and file one all-inclusive Petition, pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). The Petition presents five grounds.

The State filed an Answer seeking dismissal of the Petition, arguing that the Petition is untimely and that none of the grounds asserted satisfies the standard for habeas relief.  Petitioner filed a Traverse and a Memorandum of Law.

## II.  STANDARD OF REVIEW

A habeas corpus petition must meet "heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254 Rule 2(c)).  The petition must specify all the grounds for relief available to the petitioner, state the facts supporting each ground, and state the relief requested.  See 28 U.S.C. § 2254 Rule 2(c)(1), (c)(2), (c)(3).

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

A district court must give deference to determinations of state courts.  Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87,

90 (3d Cir. 1996).  Federal courts "must presume that the factual findings of both state trial and

appellate courts are correct, a presumption that can only be overcome on the basis of clear and

convincing evidence to the contrary."  Stevens v. Delaware Correctional Center, 295 F.3d 361,

368 (3d Cir. 2002).    Where a federal claim was "adjudicated on the merits" [1] in state court

proceedings, § 2254 does not permit habeas relief unless adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal Law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

A decision is "'contrary to' a Supreme Court holding if the state court 'contradicts the

governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a

[different] result."  Rompilla v. Horn, 355 F.3d 233, 250 (3d Cir. 2004) (quoting Williams v.

Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "'unreasonable application' clause, a federal habeas court may grant the writ if

the state court identifies the correct governing legal principle from th[e Supreme] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams,

---

[1] "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (quoting Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir.2001)).  A state court may render an adjudication or decision on the merits of a federal claim by rejecting the claim without any discussion whatsoever.  Rompilla, 355 F.3d at 247.

529 U.S. at 413.  Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.  Id. at 409-10.

A court begins the analysis by determining the relevant clearly established law.  See Yarborough v. Alvarado, 541 U.S. 652, __, 124 S.Ct. 2140, 2147 (2004).  Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 71 (2003) (habeas court must determine "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision") .

### III.  DISCUSSION

A.  Statute of Limitations

Respondents argue that the Petition is untimely.  On April 24, 1996, Congress enacted the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."  28 U.S.C. § 2244(d)(1).  The limitations period runs from the latest of

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence . . . .

28 U.S.C. § 2244(d)(1).

In this case, the applicable limitations provision is § 2244(d)(1)(A).  Petitioner's conviction became final when the Supreme Court of New Jersey denied certification on direct review on October 2, 1996, and the time to file a petition for certiorari in the United States Supreme Court expired on December 31, 1996.  See Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir. 2003); Nara v. Frank, 264 F.3d 310, 315 (3d Cir. 2001); Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998).  Absent statutory or equitable tolling, the limitations period would have expired on December 31, 1997.

The statute of limitations under § 2244(d) is subject to two tolling exceptions:  statutory tolling and equitable tolling.  Merritt, 326 F.3d at 161; Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 617-18 (3d Cir. 1998).  Section 2244(d)(2) requires statutory tolling under the following circumstances:  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).  Because Petitioner filed his first PCR petition in the Law Division in November 1996, before his conviction became final, the limitations period was statutorily tolled from January 1, 1997, until the Supreme Court of New Jersey denied Petitioner's petition for certification by order filed January 3, 2001.  Petitioner had one year, or until January 3, 2002, to hand his habeas petition to prison officials for mailing.  See Houston v. Lack, 487 U.S. 266 (1988).  Since Petitioner executed the Petition on December 21, 2001, and presumably handed it

6

to prison officials for mailing to the Clerk on that date, the Petition appears to be timely.

Nevertheless, Respondents argue that the Petition is untimely because the post conviction relief

application was not "pending" within the meaning of § 2244(d)(2) during the intervals between

the time the lower courts denied post conviction relief and the time Petitioner filed a notice of

appeal and a petition for certification.

      This argument is without merit.  In <u>Carey v. Saffold</u>, 536 U.S. 214 (2002), the Supreme

Court determined that the statute of limitations continues to toll pursuant to § 2244(d)(2) during

the intervals between a defendant receiving a state court decision on his post conviction relief

petition and the filing of any appeals.  Accordingly, the Petition is timely.  <u>Id.</u>

B.  <u>Ineffective Assistance of Counsel</u>

      In Grounds One and Two, Petitioner raises ineffective assistance of counsel claims.

Grounds One and Two are set forth below verbatim:

> Ground One:  Petitioner was constructively denied the assistance of counsel at trial due to the complete failure of assigned trial counsel to provide any assistance at all as established by assigned trial counsel's total failure to perform in any capacity as counsel in violation of U.S. Const. Amends. VI and XIV.

> Ground Two:  Petitioner was constructively denied the assistance of counsel at trial; on direct appeal; at the remand hearing and on appeal from the denial of the remand hearing due to the fact that all assigned counsel were conflicted either through self-imposed restraints (trial counsel) or because of prior representation of codefendants in the same prosecution, in violation of U.S. Const. Amends. VI and XIV.

(Pet. ¶ 12.A., 12.B.)

Petitioner sets forth over 20 alleged instances of deficient performance. Petitioner asserts that trial counsel did not conduct pretrial investigation; did not provide him with discovery; did not have any meaningful consultation with him prior to trial; did not file motions to suppress, to dismiss the indictment, and for a directed verdict; did not obtain a copy of the polygraph transcript; did not object to certain testimony; failed to properly cross examine the co-defendant, Johnson, who testified against him; failed to object to certain hearsay; failed to explain that the money in Petitioner's possession was from insurance settlements; failed to request limiting instructions and instructions on lesser included offenses; and failed to argue that the verdict was against the weight of the evidence.

As factual support for Ground Two, Petitioner asserts that assigned counsel, who represented him on his first appeal and at the evidentiary hearing on remand, had an actual conflict of interest, which she failed to disclose, in that she had previously represented the wife of co-defendant Johnson. Petitioner argues that this created a conflict because the prosecutor had secretly entered into an agreement with Johnson to drop charges against the wife in exchange for Johnson's testimony against Petitioner.

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. Strickland, 466 U.S. at 687. First, the

defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. Id.  To satisfy the second prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

Multiple representation of co-defendants does not violate the Sixth Amendment unless it gives rise to a conflict of interest. See Holloway v. Arkansas, 435 U.S. 475, 482 (1978).  While state trial courts must investigate timely objections by defense counsel to multiple representation, id. at 483-87, a state trial judge is not constitutionally required to inquire into the propriety of multiple representation even though no party lodges an objection, see Cuyler v. Sullivan, 446 U.S. 335, 346 (1980).  "Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." Id.  In order to establish a violation of the Sixth Amendment, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. Id. at 348.  As an example of an actual conflict of interest, the Supreme Court in Cuyler cited Glasser v. United States, 315 U.S. 60, 72-75 (1942), wherein the record showed that defense counsel failed to cross-examine a prosecution witness whose testimony linked Glasser with the crime and failed to resist the presentation of arguably inadmissible evidence.  The Supreme Court found that both omissions by defense counsel resulted from counsel's desire to diminish the jury's perception of a co-

9

defendant's guilt.  Id. at 75.  Since this actual conflict of interest impaired Glasser's defense the

Court reversed his conviction.  Id.  Thus, once a court concludes that defense counsel had an

actual conflict of interest, the conflict itself demonstrates a denial of the right to the effective

assistance of counsel.  Id.; see also Cuyler, 446 U.S. at 349-350.  "But until a defendant shows

that his counsel actively represented conflicting interests, he has not established the constitutional

predicate for his claim of ineffective assistance."  Cuyler, 446 U.S. at 350.  The Cuyler Court

held that "the possibility of conflict is insufficient to impugn a criminal conviction.  In order to

demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual

conflict of interest adversely affected his lawyer's performance."  Id.

    In this case, the Appellate Division and the Law Division considered Petitioner's

deficient performance and conflict of interest claims when they denied post conviction relief.

The Law Division determined, and the Appellate Division affirmed, that Petitioner failed to

satisfy the either prong under the Strickland standard.  The Appellate Division opined:

> Defendant now raises on appeal, for the first time, a variety of
> contentions, including claims that his trial counsel failed to "adapt"
> the defense strategy when charges against two other defendants
> were dismissed prior to trial, that his attorney on direct appeal had
> a conflict of interest arising out of her alleged representation of one
> of the co-defendants whose charges had been dismissed before
> defendant's trial, and that this alleged conflict somehow prevented
> that attorney from calling the co-defendant as a witness at
> defendant's remand hearing.

> Because defendant is raising these issues for the first time on
> appeal there is no record for appellate review.  Defendant
> apparently seeks yet another hearing on these claims but we find
> absolutely no basis to support that request.  Defendant's
> contentions are a series of unsupported claims and suppositions,
> one piled on top of the other in the apparent hope that enough of
> them will create the illusion of a meritorious claim.  They do not.

>    To the extent the record permits any substantive evaluation at all,
>    we find the contentions clearly without merit and not warranting
>    further discussion, much less a remand for an evidentiary hearing.

State v. Badger, No. A-6030-97T4 slip op. at 7-8 (App. Div. June 12, 2000).

In a six-page written opinion, the Law Division specifically considered and rejected the

alleged deficiencies which Petitioner presents in this § 2254 Petition, finding

>    that the claims by the defendant are too speculative to warrant an
>    evidentiary hearing.  Many of defendant's arguments for relief are
>    vague and conclusory.  A number of them were outlined above as
>    examples of the type of arguments that the defendant is not
>    proffering.
>
>    Many, if not all, of the defendant's arguments are "Monday
>    morning quarter backing," and are really questions of whether or
>    not trial counsel should [have] gone left rather than right as a
>    matter of strategy.  One would suppose from the arguments by the
>    defendant that substantially the only evidence offered at trial
>    against the defendant was the testimony of Frank Johnson.  That is
>    not so.  There were witnesses who testified that they had seen the
>    defendant with jewelry belonging to the victim.  Others testified
>    that they saw the defendant on the victim's property.  The
>    defendant, now having the advantage of hindsight criticizes his
>    trial lawyer's strategy with a scrutiny which no trial lawyer  actions
>    can withstand.  Assuming arguendo that this Court would find that
>    trial counsel's performance was deficient (which it does not), there
>    has been absolutely no showing that the deficient performance
>    prejudiced the defendant.  For the reasons above stated, the
>    application is denied.

(Id. at 5-6.)

Petitioner is not entitled to habeas relief under Ground One (deficient performance of trial

counsel) because the New Jersey courts' adjudication of the claim did not result in a decision that

was contrary to, or involved an unreasonable application of Strickland or other Supreme Court

holdings.  Petitioner is not entitled to habeas relief under Ground Two (conflict of interest)

because he has not shown that counsel had an actual conflict of interest which adversely affected counsel's performance.  See Cuyler, 446 U.S. at 349-50.

C.  Prosecutorial Misconduct

In Ground Three, Petitioner asserts:

> Ground Three:  Petitioner was denied a fair process and fundamental fairness due to pervasive acts of misconduct committed by the prosecutor contrary to the provisions of U.S. Const. Amends. V and XIV.

(Pet. ¶ 12.C.)

As factual support, Petitioner alleges first that Cumberland County Assistant Prosecutor Robert J. Luther committed prosecutorial misconduct by secretly making an agreement with co-Defendant Frank Johnson and failing to disclose this secret agreement under Brady v. Maryland, 373 U.S. 83 (1973).  Petitioner asserts that the prosecutor obtained an indictment against Petitioner, his sister (Patricia Johnson), the sister's husband (Frank Johnson), and Anthony Burton; subsequently met with Johnson outside the presence of Johnson's attorney; and agreed that, if Johnson testified that Petitioner committed the murder, then the state would dismiss the charges against Patricia Johnson and would not oppose Johnson's motion for a sentence reduction after Petitioner's conviction.  Petitioner alleges that, although the prosecutor disclosed the plea agreement whereby Frank Johnson would receive a 30-year sentence with a 10-year period of parole ineligibility, the prosecutor failed to disclose the remainder of the leniency agreement.

The record reveals that Petitioner raised the Brady violation before the Appellate Division on direct appeal, and that the Appellate Division remanded these issues for an evidentiary

hearing.[2]  On remand, Superior Court Judge Paul R. Porreca conducted an evidentiary hearing and entered an order finding the testimony of the judge who granted Johnson's untimely motion for a sentence reduction, the defense attorney, and the prosecutor to be credible, finding the testimony of Frank Johnson not to be credible, finding no Brady violation, and denying Petitioner's motion for a new trial.  See State v. Badger, Indictment No. 91-0528-I/A order (Law Div., Cumberland County, Nov. 17, 1994).

Petitioner appealed the order denying his motion for a new trial, and on June 11, 1996, the Appellate Division affirmed.  See State v. Badger, No. A-2252-94T3 slip op. (App. Div. June 11, 1996).  The Appellate Division noted that the burden was on Petitioner to establish that Johnson's recantation testimony was probably true and his trial testimony was probably false, and further noted that the trial judge found Johnson's recantation testimony not to be credible. Specifically, the Appellate Division determined:

> We have canvassed the record in light of the credibility determinations of the judge and conclude that there was sufficient evidence to support such findings.  Moreover, Johnson's later entry of a guilty plea in which he admitted that his testimony at the new trial motion hearing was false buttresses the judge's credibility assessment.
>
> The remaining issue, that the Assistant Prosecutor should not have been permitted to represent the State and be a witness at the new trial motion, is clearly without merit.  R. 2:11-3(e)(2).

---

[2]  "We do not go so far as to say that Johnson's late resentencing application and the relief he obtained might not have been matters entirely independent of his testimony at trial.  The circumstances, however, makes us skeptical of the proposition that at the time Johnson testified, the prospect of the resentencing relief was not in some way communicated to him, and if it was, that communication, in whatever form it might have taken, would have been exculpatory evidence defendant would have been entitled to."  State v. Badger, No. A-1572-92T1 slip op. at 12 (App. Div. June 29, 1994).

Id. at p. 9.

The prosecution in a criminal proceeding has a due process obligation to disclose to the defendant its knowledge of material evidence favorable to the defendant, either because it is exculpatory or because it can serve to impeach a key prosecution witness.  See Kyles v. Whitley, 514 U.S. 419, 433 (1995); Giglio v. United States, 405 U.S. 150 (1972); Brady v. Maryland, 373 U.S. 83 (1967).  Impeachment evidence includes promises that the prosecution makes to key witnesses in exchange for their testimony.  Giglio v. United States, 405 U.S. 150, 154-55 (1972). Nondisclosure merits habeas relief only if it "undermines confidence in the outcome of the trial." Kyles, 514 U.S. at 434 (quoting Bagley, 473 U.S. at 678).

The Supreme Court has described three distinct situations in which a Brady claim arises: "first, where previously undisclosed evidence revealed that the prosecution introduced trial testimony that it knew or should have known was perjured; second, where the Government failed to accede to a defense request for disclosure of some specific kind of exculpatory evidence; and third, where the Government failed to volunteer exculpatory evidence never requested, or requested only in a general way."  Kyles, 514 U.S. at 433 (internal citations omitted).

Whether a cooperation agreement exists between the prosecutor and the state's witness is a factual determination.  "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)."  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  The presumption of correctness is particularly important when a federal court reviews the state trial court's

assessment of witness credibility.  Id. at 339.  "Deference is necessary because a reviewing court, which analyzes only the transcripts . . . , is not as well positioned as the trial court is to make credibility determinations."  Id.

In this case, the prosecutor disclosed to Petitioner that Frank Johnson had entered into a plea agreement whereby he received a sentence of 30 years with a 10-year parole disqualifier in exchange for his testimony against Petitioner.  Petitioner argues that the prosecutor made additional undisclosed promises, i.e., to dismiss criminal charges against Patricia Johnson and not to oppose Frank Johnson's motion for a sentence reduction.  However, after conducting an evidentiary hearing at which Frank Johnson, the prosecutor, defense counsel, and the Superior Court judge who granted the sentence reduction testified, the Law Division found (and the Appellate Division affirmed) that the prosecutor did not make undisclosed promises in exchange for Frank Johnson's testimony.

Under § 2254(e)(1), this Court must presume the New Jersey court's factual findings to be sound.  Petitioner has not rebutted this presumption of correctness by clear and convincing evidence and he has not established that the decision of the New Jersey courts was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  See Shabazz v. Artuz, 336 F.3d 154 (2nd Cir. 2003) (holding that habeas petitioner did not present evidence sufficient to rebut presumption of correctness afforded state court factual findings in rejecting Brady claim regarding undisclosed promises of leniency to prosecution witness).   Accordingly, Petitioner is not entitled to habeas relief on Ground Three.

Petitioner further argues in support of Ground Three that the prosecutor violated his right to due process of law in his opening and closing statements.  As to this issue, the Appellate Division determined that

> [t]here was nothing prejudicially unfair about the opening statement.  We are also satisfied that that is so with respect to the prosecutor's closing statement.  The prosecutor is accorded broad latitude in forcefully and graphically summing up the State's case. We see nothing in the summation here prejudicially transcending the bounds of permissible fair comment.

State v. Badger, No. A-1572-92T1 slip op. at 13 (App. Div. June 29, 1994).

Prosecutorial misconduct may "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process."  Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  Where "specific guarantees of the Bill of Rights are involved, [the Supreme] Court has taken special care to assure that prosecutorial misconduct in no way impermissibly infringes them."  Id. at 642.  The quantum or weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process. Darden v. Wainwright, 477 U.S. 168, 182 (1986); Donnelly, 416 U.S. at 644; Moore v. Morton, 355 F.3d 95, 111 (3d Cir. 2001).

This Court concludes that the Appellate Division's adjudication of Petitioner's prosecutorial misconduct claim did not result in a decision that involved an unreasonable application of, clearly established Supreme Court precedent.  Habeas relief is therefore not warranted on this claim.

D.  Sufficiency of Evidence

In Ground Four, Petitioner asserts that "the verdict was against the weight of the evidence."  (Pet. ¶ 12.D.)  Petitioner contends that the evidence was insufficient to convict him because Frank Johnson testified falsely, the other testimony presented by the prosecution was "incompetent," and there was no physical evidence connecting Petitioner to the crime.

A sufficiency of the evidence claim is governed by Jackson v. Virginia, 443 U.S. 307, 318 (1979).  In Jackson v. Virginia, the Supreme Court determined that, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 - if the settled procedural prerequisites for such a claim have otherwise been satisfied - the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Id. at 324.  The Court instructed a federal habeas corpus court "faced with a record of historical facts that supports conflicting inferences [to] presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and [to] defer to that resolution."  Id. at 326.  The Court emphasized that "the standard . . . does not permit a court to make its own subjective determination of guilt or innocence."  Id. at 320, n. 13.

In this case, Petitioner argued on direct appeal that the jury's verdict was against the weight of the evidence.  The Appellate Division ruled that, given that the credibility of the State's witnesses was the primary issue, the jury was clearly at liberty to have opted to believe them.  Accordingly, the Appellate Division affirmed.  The Appellate Division's adjudication of Petitioner's sufficiency of the evidence claim was not contrary to, or an unreasonable application of, Jackson v. Virginia, and Petitioner is not entitled to habeas relief on Ground Four.

17

E.  Cumulative Effect of Errors

Petitioner asserts in Ground Five that "the cumulative effect of the errors denied Petitioner fundamental fairness in violation of U.S. Const. Amends. V and XIV."  (Pet. ¶ 12.E.) Petitioner has cited no Supreme Court holdings regarding the cumulative error doctrine.  Federal courts of appeals have found, however, that "[t]he cumulative error doctrine provides relief only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness."  Jackson v. Johnson, 194 F.3d 641 at n. 59 (5th Cir.1999) (internal citation omitted).  To the extent that this doctrine is applicable at all, Petitioner is not entitled to relief on Ground Five because his trial was not fatally infected with constitutional errors.

F.  Certificate of Appealability

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

## IV.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).


s/Joseph E. Irenas
JOSEPH E. IRENAS, U.S.D.J.


DATED:   October 5             , 2005

18